**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | Criminal No.: 17-cr-253-PWG-4 |
| **FRANCIS ARTHUR,** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

The Government filed a criminal complaint and issued an arrest warrant against Defendant Francis Arthur and three co-defendants[1] on April 25, 2017, alleging counts of conspiracy to commit bank fraud and wire fraud. *See, e.g.*, Compl., ECF No. 14. Mr. Arthur made his initial appearance before this Court the next day, and he was released with conditions. ECF Nos. 23, 24. The original indictment against Mr. Arthur and his co-defendants was returned by a federal grand jury on May 10, 2017. ECF No. 45. Since that time, all of Mr. Arthur's co-defendants' cases have been resolved,[2] and only Mr. Arthur awaits trial. Mr. Arthur now seeks to have all counts against him dismissed with prejudice on the basis that the Government has breached its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and/or for failure to proceed with a jury trial consistent with the requirements of the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161, *et. seq.* Mot. 1, ECF No. 316. For the reasons that follow, I shall DENY Mr. Arthur's motion and promptly schedule his trial.

---

[1]   Samuel Attakora, Kelvin Asare, and Gifty Amponsah.
[2]   An additional co-defendant, Kokou Azianbidji, was added by Superseding Indictment filed on February 28, 2018. ECF No. 94. All four co-defendant cases have been resolved, either by entering of plea agreements or deferred prosecution.

## BACKGROUND

From December 2016 through April 2017, Mr. Arthur is alleged to have conspired with his co-defendants and others to fraudulently obtain money from financial institutions by impersonating account holders, using counterfeit identification, withdrawing cash using wire transfers, and using shell companies to launder the funds. Indictment, ECF No. 45.  In the May 10, 2017 Indictment, Mr. Arthur was named in one count of Bank Fraud Conspiracy under 18 U.S.C. § 1349.  *Id.*  The Indictment was made public on June 9, 2017.  ECF No. 52.  He was arraigned on August 21, 2017, at which time he pleaded Not Guilty.  *See* ECF No. 62.  On August 23, 2017, I granted the Government's motion to exclude time under the Speedy Trial Act, finding that the case is a complex case under 18 U.S.C. § 3161(h)(7)(ii), (iv).  Order, ECF No. 64.  The time period between June 9, 2017 and August 25, 2017 was excluded.  *Id.*

On February 28, 2018, a superseding indictment was returned, in which Mr. Arthur was named in Counts 1, 4, and 5-10.  Superseding Indictment, ECF No. 94.  Mr. Arthur was arraigned on April 16, 2018, and remains charged with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 (Count One), conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Four), and six counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(B)(i) (Counts Five - Ten).  ECF No. 120.  The case was set for trial of Mr. Arthur and two then-remaining co-defendants[3] to commence on February 19, 2019.  Ltr. Order May 11, 2018, ECF No. 125.  Mr. Arthur and his then-co-defendant, Gifty Amponsah, jointly

---

[3] Mr. Asare entered a guilty plea on February 23, 2018, ECF No. 90.  Mr. Attakora entered a guilty plea on April 2, 2018.  ECF No. 116.

moved to continue the trial,[4] and a second trial date of November 5, 2019[5] was set. *See* ECF Nos. 215, 222.

A pretrial conference was held on October 4, 2019, at which time, Mr. Arthur stated that he wished to call Mr. Asare (who had pleaded guilty, been sentenced, and begun to serve it) to testify as a witness on his behalf. *See* Mot. 2; Gov't Resp. 6, ECF No. 319; ECF Nos. 293, 315. Defense counsel was directed to contact Government counsel to obtain location and contact information for Mr. Asare. *Id.* It was determined that Mr. Asare (who was not a United States citizen or otherwise lawfully entitled to continue to reside in this country) had served his sentence and had been removed to Ghana on September 6, 2019. Resp. 6.

At this point, the case took an unexpected turn. Defense counsel reports that he unexpectedly was contacted by Mr. Asare by telephone on October 21, 25, and 31, 2019.[6] Mot. 3-4. Defense counsel further reports that on October 31, 2019, Mr. Asare told him information beneficial to Mr. Authur's defense, namely, that Mr. Arthur was not a knowing and voluntary member of the charged conspiracy, and that he had informed counsel for the Government about Mr. Arthur's lack of involvement during his plea and sentencing. *Id.* at 4. Defense counsel filed a motion for a *De Bene Esse* Deposition of Mr. Asare and to continue the trial and motions hearing. ECF No. 293. The Government agreed that the motion to continue should be granted and suggested that a video recorded deposition of Mr. Asare was the most appropriate action. ECF

---

[4] With the consent of the Government, Defendants asserted that postponement was warranted by the need to provide the Ghanaian government sufficient time to respond to the letters rogatory issued by the Court on December 11, 2018, for potential depositions under Fed. R. Crim. P. 15, and for defense counsel's need to analyze additional discovery materials. ECF No. 215.

[5] Jury selection and a continued motions hearing was scheduled for November 5, 2019, and the trial itself was scheduled to commence on November 12, 2019. ECF No. 222.

[6] The Government reports that after the pretrial conference, Mr. Asare's former counsel was contacted in an effort to locate Mr. Asare. In an email dated October 22, 2019, Mr. Asare's former counsel advised the Government that he had passed along Mr. Arthur's counsel's contact information to Mr. Asare. *See* ECF Nos. 295 at 2, 295-2.

3

No. 295. I granted the motion to continue, and a video deposition was scheduled to take place on December 13, 2019. Mr. Asare's former counsel was also reappointed for purposes of the video deposition. Resp. 4; ECF No. 315.

Counsel for Mr. Arthur, Mr. Asare, and the Government, as well as the Court gathered at a conference room at the United States Attorney's office in the early hours of December 13, 2019 (to accommodate time differences between the United States and Ghana). Although Mr. Asare had confirmed he would participate in the video deposition, he stopped responding to messages, he did not appear, and he has remained unresponsive since that time. *Id.* Neither the Government's efforts nor his counsel's efforts to locate Mr. Asare were successful. ECF No. 315. On March 7, 2020, Mr. Arthur's counsel requested a status conference. ECF No. 313. A telephone conference was scheduled for March 13, 2020, which was the last day the court held regular proceedings before the exigent circumstances created by the COVID-19 pandemic necessitated dramatic reductions in Court operations.[7] Mr. Arthur was advised that he could respond to the Government's summary status report (ECF No. 315), may file a dismissal motion as requested, and a further telephone conference would be scheduled after March 27, 2020[8] for setting a new trial date. Mr. Arthur filed the pending motion to dismiss the superseding indictment, which is now fully briefed. I have reviewed the briefs and exhibits and find a hearing unnecessary. *See* Loc. R. 105.6, 207 (D. Md. 2018). Because I find that Mr. Arthur has failed to show a *Brady*

---

[7] All proceedings, except emergency proceedings, were postponed and continued pending further Order of the Court, and the time period of the continuances implemented by the order were excluded under the Speedy Trial Act, "as the Court specifically finds that the ends of justice served by ordering the continuances outweigh the best interests of the public and each defendant in a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A)." Standing Order 2020-03. The time period between March 16, 2020 and July 31, 2020 will be excluded under the Speedy Trial Act. Standing Order 2020-11.
[8] The end date for the Court's Standing Order in effect at that time. Subsequently, it was extended.

violation, a Speedy Trial Act violation, or that he was denied his constitutional right to a speedy trial, I shall DENY Mr. Arthur's motion and promptly set a trial date.

## ANALYSIS

### I.     Brady Violation

According to Mr. Arthur, Mr. Asare told Government counsel that Mr. Arthur had no knowledge of the real purpose of the conspiracy and was not involved in the conspiracy. Mot. 6. Mr. Arthur contends that this information constitutes exculpatory *Brady* information and the Government's failure to disclose the information violated his due process rights. *Id.* at 5-7. The Government asserts that it has provided all the materials it was obligated to provide and adds that—contrary to what he may have told counsel for Mr. Arthur—Mr. Asare *confirmed*, as opposed to disclaimed, Mr. Arthur's knowledge and participation in the illegal scheme underlying the charges. Resp. 1, 7.

In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Pursuant to *Brady,* the Government has a responsibility to disclose material evidence that is favorable to the accused. *United States v. McLean,* 715 F.3d 129, 142 (4th Cir. 2013). The burden is on the defendant to prove a *Brady* violation by showing "that the undisclosed evidence was (1) favorable to him either because it is exculpatory, or because it is impeaching; (2) material to the defense, i.e., 'prejudice must have ensued'; and (3) that the prosecution had materials and failed to disclose them." *United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010) (quoting *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001)).

5

Mr. Arthur fails to make this showing. First, accepting that Defense counsel spoke with Mr. Asare, who maintained that he'd made the described statement to Government counsel, there is no credible evidence to support that the Government had the statement and failed to disclose it. The Government produced all Memorandum of Interviews with Mr. Asare, and two DVDs containing four separate video recordings of law enforcement interviews, to the Defense (including counsel for Mr. Arthur). Resp. 5 (citing exhibits). Mr. Asare's interviews produced to the defense included statements in which Mr. Asare appeared to deny that there was a conspiracy, and described Mr. Arthur as his partner in a company that bought salvaged car parts to sell, but also included statements such as "[t]he fraud scheme was explained to Arthur" and "Arthur chose to participate, but did not know every detail of the scheme. However, Arthur was aware he would be receiving the proceeds of a fraud scheme." Resp. 5-6 (citing Ex. 4, 10). To the extent that Mr. Asare gave conflicting narratives about the existence of a conspiracy and the legitimacy of his business relationship with Mr. Arthur, this information *was* disclosed by the Government to counsel for the defendants. Mr. Asare, after contacting counsel for Mr. Arthur and agreeing to a deposition, declined to appear to clarify, corroborate, or elaborate on his statements to Mr. Arthur's counsel.[9] Had he done so, it would have been possible to reconcile his differing accounts of his and Mr. Arthur's involvement in the charged conduct. Some of the statements in the materials provided by the Government could be the same statements to which Mr. Asare was referring in his telephone conversation with Defense counsel.

But regardless of any remaining uncertainty of what Mr. Asare would or would not have said if he had appeared for his deposition, it is beyond dispute that, as part of his guilty plea, Mr.

---

[9] In his motion, Mr. Arthur (in conclusory fashion) asserts that there is other evidence that corroborates Mr. Asare's statements to counsel, but declines to say what it is, and this unparticularized assertion alone does not suffice. *See* Mot. 6.

6

Asare stated under oath that Mr. Arthur *was* a member of the conspiracy. *See, e.g.*, Asare Plea Agreement, Resp. Ex. 1 at 8 ("From in or about February 2017, to March 9, 2017, Defendant Kelvin Asare ("ASARE"), along with co-conspirators Valerie Hughes, Samuel Attakora, Francis Arthur, and Gifty Amponsah, did knowingly and willfully conspire, confederate, and agree with each other and other individuals to execute a scheme and artifice to defraud financial institutions . . . in violation of 18 U.S.C. § 1349."). A *Brady* claim arises when there is an "obviously exculpatory character of certain evidence" or "the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce . . . ." *United States v. Agurs*, 427 U.S. 97, 107 (1976). It is not apparent that such a duty applies to evidence that may only be construed as favorable when entirely stripped from the surrounding context.

Here, the purported missing statement, in the context of the other statements Mr. Asare made, fails to establish that Mr. Arthur knew nothing about the conspiracy. At most, it simply evidences that Mr. Arthur knew of some, but not all of the details of the conspiracy, which is not exculpatory, material evidence.[10] Mr. Arthur can be found to have been a member of the conspiracy without him having complete knowledge of all aspects of the conspiracy. *See, e.g., United States v. Mabry*, 953 F.2d 127, 130 (4th Cir. 1991); *United States v. Roberts*, 881 F.2d 95, 101 (4th Cir.1989) ("[O]ne may become a member of a conspiracy without full knowledge of all of its details, but if he joins the conspiracy with an understanding of the unlawful nature thereof

---

[10] Suppressed evidence is material if there is a reasonable probability that disclosure would put the whole case in a different light, such that the result of the proceeding would be different. *See, e.g.*, *McLean*, 715 F.3d at 142; *see also United States v. Catone*, 769 F.3d 866, 872 (4th Cir. 2014) ("Evidence is 'material' only if it is 'likely to have changed the verdict.'" (quoting *United States v. Bartko*, 728 F.3d 327, 338 (4th Cir. 2013))).

and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before, and even though he played only a minor part.").

Further, as argued by the Government, Mr. Asare's contradicting statements make him an unreliable witness. Resp. 12. As such, the information that he provided to counsel for Mr. Arthur when he called him in October 2019, when combined with his sworn statement in support of his guilty plea and the inferences that can be drawn from the fact that when faced with the opportunity to square his contradictory statements under oath and be cross-examined by the Government, he failed to appear, the allegedly-missing statement is not likely to "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). Also, if Mr. Asare supposedly could testify that Mr. Arthur knew nothing about the conspiracy, Mr. Arthur certainly would have known this.[11] As such, failure to provide a statement allegedly made by Mr. Asare to that effect is not a *Brady* violation. *See Hoke v. Netherland*, 92 F.3d 1350, 1355 (4th Cir. 1996) ("The strictures of *Brady* are not violated, however, if the information allegedly withheld by the prosecution was reasonably available to the defendant."); *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990) ("In situations such as this, where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine.").

As stated by the Supreme Court, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense."

---

[11] Indeed, Mr. Arthur argues that Mr. Asare brought him into this matter and that the information about Mr. Arthur's lack of involvement in the conspiracy has been available since February 2017 or earlier. Mot. 2.

8

*Kyles*, 514 U.S. at 436-37 (citing *United States v. Bagley*, 473 U.S. 667, 675, n.7 (1985)). The Government is not obligated to provide the entire file to defense counsel. *Bagley*, 473 U.S. at 675.

Accordingly, Mr. Arthur has not met his burden to show that there is a *Brady* violation, and, inasmuch as the Government has stated in its response to the motion that it produced to defense counsel all the statements made by Asare to them, I shall not require the Government to produce the entire file as Mr. Arthur demands.[12]

## II.  Speedy Trial

Mr. Arthur also argues that his rights to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and under the Sixth Amendment to the Constitution were violated. Mot. 1, 8. He argues that if the Government had met its *Brady* obligations, the case would have been tried in November 2019,[13] and no trial is currently scheduled. Mot. 8. Mr. Arthur does not provide any calculations related to the Speedy Trial Act, so it is unclear exactly how he believes it was violated.[14]

---

[12]  This Court has no obligation to review the government's files to determine whether all *Brady* evidence has been produced when the Court has received assurances from the government that all material exculpatory evidence has been produced. *See United States v. Holmes*, 722 F.2d 37, 41 (4th Cir. 1983).

[13]  It is not clear whether Mr. Arthur contends that if the trial had gone ahead in November 2019, there would have been no speedy trial violation. Mr. Arthur asserts that he was initially indicted on May 10, 2017, and the case was set for trial on November 5, 2019, which was two and half years later. Mot. 8. He then asserts he had to file a motion seeking Mr. Asare's *De Bene Esse* deposition, and since then, the trial has not been rescheduled. *Id.* He claims that if the trial is not held until 2021, it would be over four years after his initial Indictment, but if the Government had met its *Brady* obligations, his case would have been tried in November 2019. *Id.*

[14]  In this regard, I note an instructive Tenth Circuit case, *United States v. Allen*, in which the defendant failed to articulate arguments related to a claimed speedy trial violation. 603 F.3d 1202 (10th Cir. 2010). The Court stated: "Defendant failed to demonstrate that any violation of her rights under the Speedy Trial Act occurred, where she did not support her position with a legal argument and did not explain her position on the facts and posture of the case; defendant's brief did not include any explanation or calculation to support her position that the Speedy Trial Act 'clock' had expired, did not state which time periods should have been excluded and which included in the running of the clock, or when the clock expired. . . . It is not the task of this court to make a party's argument for her. . . . She simply makes the bald assertion that the Speedy Trial Act clock expired sometime before her trial notwithstanding the many motions filed in the case. We decline the apparent invitation to analyze the record for Ms. Allen to determine whether a violation

9

"A criminal defendant's right under the [Speedy Trial] Act is separate and distinct from his Sixth Amendment right to a speedy trial." *United States v. Thomas*, 305 F. App'x 960, 963 (4th Cir. 2009) (citing *United States v. Woolfolk*, 399 F.3d 590, 594-98 (4th Cir. 2005)). The Speedy Trial Act states, in pertinent part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161 (c)(1). If the Act is violated, the defendant may make a motion to dismiss the indictment. *Thomas*, 305 F. App'x at 963; § 3162(a)(2). The defendant has the burden of proof to support a dismissal motion, but the Government has the burden of providing evidence in connection with exclusions of time under § 3161(h)(1). § 3162(a)(2).

In contrast, the Sixth Amendment right to a speedy trial is analyzed under a four-factor balancing test established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The *Barker* factors require a court to weigh: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Id.* Mr. Arthur's speedy trial analysis is limited to the *Barker* factors.

Although Mr. Arthur provides no support for how the Speedy Trial Act is violated, the Government provided detailed calculations which show that there have been 1088 days since the original indictment, 988 of which are mandatorily excluded, and 100 of which they request the Court to now exclude by order. Resp. 16. Mr. Arthur does not refute these calculations in his

---

occurred. That task was for her counsel and it has not been performed. We therefore hold that no Speedy Trial Act violation has been shown." *Id.* at 1209.

Reply. In sum, the Superseding Indictment was filed on February 28, 2018, which added multiple new charges and restarted the clock. *See United States v. Dixon*, 542 F. App'x 273, 278 (4th Cir. 2013) ("The filing of the superseding indictment in this case restarted the STA trial clock"). Mr. Arthur was arraigned on the Superseding Indictment on April 16, 2018, which becomes the date relevant to the Speedy Trial inquiry. *See United States v. Zandi*, 769 F.2d 229, 233 (4th Cir. 1985) ("Since the appellants, in the instant case, appeared before a judicial officer after the date of the indictment, the dates of arraignment, and not the date of indictment, are relevant to our Speedy Trial inquiry.").

On May 11, 2018, an Order was issued scheduling trial to commence on February 19, 2019. Ltr. Order, ECF No. 125. On July 12, 2018, multiple motions were filed and were adopted by Mr. Arthur. *See* ECF Nos. 138-145, 162. The Government requests the Court to exclude the 88 days (from April 16 to July 12, 2018) pursuant to § 3161(h)(7)(A), because at that time, this case was a "multi-defendant case, involving voluminous financial-related discovery, was proceeding at full speed—to trial for some defendants and towards a resolution for others." Resp. 18 (providing examples from the docket); *see* § 3161(h)(7)(B)(ii). The motions were disposed of on November 29, 2018, and the time from July 12 to November 29, 2018 is excluded under § 3161(h)(1)(D).

On November 29, 2018, at Defense request, the Court ordered Letters Rogatory to be issued for certain witnesses in Ghana, and the Government requests that the year (from November 29, 2018 to November 29, 2019) in connection with this attempt to gather evidence in a foreign country be excluded pursuant to § 3161(h)(8). On December 10, 2018, the Government filed two Motions in Limine, one of which was ruled upon on September 25, 2019, and the other remains pending. *See* ECF Nos. 206, 207, 287. This time is excluded under § 3161(h)(1)(D). Further, Mr. Arthur's motion to depose Mr. Asare was filed on October 31, 2019, in which Mr. Arthur requested that the

11

November 2019 trial date and motions hearing be continued, stating: "any inconvenience to the Court and the parties is far outweighed by Mr. Arthur's Constitutional/Sixth Amendment Rights to a Fair Trial where he can call witnesses in his defense . . . ." ECF No. 293. The Government adds that the unavailability of Mr. Asare, as an essential witness according to Mr. Arthur, also provides for the exclusion of time under § 3161(h)(3)(A).

As stated, Mr. Arthur has not responded to the Government's calculations, and appears to indicate that if the trial had been held in November, there would have been no violation. The delays since then have been at Mr. Arthur's request, up to the March 13, 2020 telephone status conference, at which time, Mr. Arthur requested that the trial be rescheduled, but he also requested to file this pending dismissal motion. The time period between March 16, 2020 and July 31, 2020 is excluded under the Speedy Trial Act. Standing Orders 2020-03, 2020-11.

Accordingly, I shall grant the Government's request to exclude the time from April 16, 2018 to July 12, 2018 under § 3161(h)(7)(A) because this serves the ends of justice, and I shall also grant the request to exclude the time between November 29, 2018 and December 10, 2018 under § 3161(h)(8). Therefore, there is no violation of the Speedy Trial Act at this time.

"Although compliance with the Speedy Trial Act does not bar Sixth Amendment speedy trial claims, 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the [S]ixth [A]mendment right to a speedy trial has been violated.' " *United States v. Riley*, No. WDQ-13-0608, 2015 WL 501786, at *13 n.38 (D. Md. Feb. 4, 2015) (quoting *United States v. Davenport*, 935 F.2d 1223, 1238-39 (11th Cir. 1991)). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.

With regard to the analysis of the *Barker* factors, Mr. Arthur contends that a delay in excess of one year is presumptively prejudicial, which triggers the analysis of the remaining factors. Mot. 10 (citing *Woolfolk*, 399 F.3d at 597-98). The first factor—whether delay before trial was uncommonly long—is a threshold requirement, and if the defendant makes this showing, he must then show that "on balance," the four factors weigh in his favor. *Woolfolk*, 399 F.3d at 597. (quoting *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995)); *see also Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). The length of delay that is presumptively prejudicial depends on the circumstances of the case. *Barker*, 407 U.S. at 530. Here, the Government agrees that the delay is sufficient to trigger the full inquiry, Resp. 24, and the fact that there is currently no set trial date adds weight to a finding that the threshold inquiry has been satisfied even though there is no Speedy Trial Act violation. As a separate factor, the length of the delay weighs in Mr. Arthur's favor, but it does not weigh heavily in his favor, since most of the delay is justified under the circumstances of this case.

The second factor—the reason for the delay—is closely related to the length of the delay. "Deliberate delay 'to hamper the defense' weighs heavily against the prosecution," while "delay caused by the defense weighs against the defendant." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Barker*, 407 U.S. at 531). Mr. Arthur argues that the Government's *Brady* violations hampered his defense, especially since he cannot now call Mr. Asare as a witness. Mot. 10. However, as discussed above, Mr. Arthur has not shown a *Brady* violation, and the delays have not been due to bad faith or negligence on the Government's part. The delay caused by exigent circumstances created by the COVID-19 pandemic cannot be weighed against the Government, and I consider it neutral. On the other hand, the defense moved to postpone the trial twice, Mr.

Arthur joined in his co-defendant's motion to gain evidence from Ghana in November 2018, which was provided as part of the reason for the first trial continuance in which Mr. Arthur also joined. Mr. Arthur requested the second trial continuance to seek Mr. Asare's deposition. This factor tends to weigh against Mr. Arthur.

The third factor—whether defendant timely asserted his right—is probably best seen as neutral. Mr. Arthur has only now asserted his right, "[a]fter three years of patience." Mot. 11. However, only a few months ago, in October 2019, Mr. Arthur stated that his attempt to gain Mr. Asare's deposition outweighed his right to a speedy trial. Having now asserted his right, Mr. Arthur states that he "will not consent to any further trial delays or extensions." *Id.*

The fourth factor—prejudice to the defendant—"should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The *Barker* court identified three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* Mr. Arthur is not incarcerated pretrial, and other than his argument that his defense is impaired, he refers only to prejudice caused by further delay. Mot. 11. Indeed, if, as Mr. Arthur contends, the Government has no case without Mr. Asare's testimony, the best way to avoid prejudice is to now proceed to trial promptly so he may prevail.

"[N]one of the four factors identified above [are] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. In light of all the circumstances of this case to date, it is apparent that Mr. Arthur has not been denied his constitutional right to a speedy trial, but the clock is ticking. Accordingly, I shall

DENY Mr. Arthur's Motion to Dismiss the Superseding Indictment, and promptly order a telephone conference to schedule Mr. Arthur's trial.

## ORDER

For the foregoing reasons, it is, this 9th day of June, 2020, hereby ORDERED that:

1. Defendant Arthur's Motion to Dismiss the Superseding Indictment Against Mr. Arthur (ECF No. 316) is DENIED.

2. A telephone conference shall be promptly ordered for the purposes of setting a trial date and scheduling pretrial matters.

_____/S/_____
Paul W. Grimm
United States District Judge