

EBP/CJN: USAO 2017R00232

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.  PWG-17-253** |
| | * | |
| **FRANCIS ARTHUR,** | * | **(Conspiracy to Commit Wire Fraud,** |
| | * | **18 U.S.C. § 1349; Money Laundering** |
| **Defendant** | * | **Conspiracy, 18 U.S.C. § 1956(h);** |
| | * | **Money Laundering, 18 U.S.C.** |
| | * | **§ 1956(a)(1)(A)(i) and (B)(i);** |
| | * | **Forfeiture, 18 U.S.C. § 982, 21 U.S.C.** |
| | * | **§ 853, 28 U.S.C. § 2461(c))** |
| | * | |

\*\*\*\*\*\*\*

## SECOND SUPERSEDING INDICTMENT
### (As to Defendant Francis Arthur Only)

## COUNT ONE
### (Wire Fraud Conspiracy)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Second Superseding Indictment:

### Introduction

1.      Defendant **FRANCIS ARTHUR ("ARTHUR")** was a resident of the State of Maryland.

2.      Co-conspirators **Gifty Amponsah, a/k/a "Sister" ("Amponsah"); Kelvin Asare, a/k/a "Pedro Johnson" ("Asare"); Valerie Hughes ("Hughes");** and **Samuel Attakora ("Attakora")** were residents of the State of Maryland.  Co-conspirator **Kokou Azianbidji, a/k/a "Chairman," a/k/a "John" ("Azianbidji")** was a resident of the State of New York.

3.      Nymeo Federal Credit Union ("Nymeo") was a financial institution within the meaning of 18 U.S.C. § 20, and was insured by the United States government via the National Credit Union Share Insurance Fund.  Nymeo's headquarters was located in Frederick, Maryland.

4.      Anivac, Inc. ("Anivac") was a Maryland company registered on October 31, 2016, and **ARTHUR** was Anivac's registered agent.  Anivac maintained bank accounts at Wells Fargo Bank, N.A. ("Wells Fargo"), account number ending in x8245 ("Wells Fargo x8245"), and SunTrust Bank, account number ending in x6559 ("SunTrust x6559").

5.      Fresh Start Support Services ("Fresh Start") was a Maryland company registered on October 31, 2016, and **Amponsah** was Fresh Start's registered agent.  Fresh Start maintained a checking account at Wells Fargo, account number ending in x5892 ("Wells Fargo x5892") and a savings account at Wells Fargo, account number ending in x1126 ("Wells Fargo x1126").

6.      Victim 1 and Victim 2 were residents of the State of Maryland who maintained bank accounts at Nymeo.

7.      **Hughes** was an employee at Nymeo in Maryland.

### The Conspiracy and Scheme to Defraud

8.      From in or around December 2016 through in or around April 2017, in the District of Maryland and elsewhere, the defendant,

### FRANCIS ARTHUR,

knowingly and willfully combined, conspired, confederated, and agreed with **Amponsah**, **Asare**, **Attakora**, **Azianbidji**, **Hughes**, and with others, known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly devise and intend to devise a scheme and artifice to defraud victim account holders at Nymeo, and to obtain money and property from the victim account holders, by means of materially false and fraudulent pretenses, representations,

2

promises, and material omissions (the "scheme to defraud"), and for the purpose of executing and attempting to execute the scheme to defraud, to cause to be transmitted by means of wire communication, in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

<u>**Manner and Means of the Conspiracy and Scheme to Defraud**</u>

It was part of the conspiracy and scheme to defraud that:

9.      **ARTHUR** and his co-conspirators initiated and attempted to initiate fraudulent financial transactions, including wire transfers and withdrawals, from the accounts of victims, including Victim 1 and Victim 2, using counterfeit identification documents and stolen personal identifying information.

10.     **Asare**, **Attakora**, and other co-conspirators recruited an employee from a financial institution to gain access to victims' sensitive account and personal identifying information, which were then used to perpetrate the fraud.

11.     **Amponsah**, **Asare**, **Attakora**, and other co-conspirators discussed withdrawing money from the victims' accounts and distributing the stolen proceeds among the co-conspirators.

12.     **Asare**, **Attakora**, and other co-conspirators promised money to **Hughes** in exchange for **Hughes**'s participation in the scheme.

13.     **Asare**, **Amponsah**, and other co-conspirators recruited **Azianbidji** to impersonate Victim 1, in person, at a physical branch of a financial institution in order to initiate and attempt to initiate fraudulent financial transactions, including wire transfers and counter withdrawals.

14.     **ARTHUR**, **Amponsah**, **Asare**, and other co-conspirators created shell companies with little or no legitimate business, including Anivac and Fresh Start, whose principal purpose was to launder funds received as a result of the fraudulent scheme.

15.     **ARTHUR**, **Amponsah**, and **Azianbidji** transferred the proceeds of the fraudulent wire transfers to accounts held at various financial institutions in the name of shell companies controlled by **ARTHUR** and **Amponsah**, including Anivac and Fresh Start.

16.     After the stolen funds were deposited into Wells Fargo x8245 and Wells Fargo x5892, **ARTHUR**, **Amponsah**, **Asare**, **Attakora**, and other co-conspirators issued and cashed checks from the accounts of shell companies.

17.     **Asare** and **Attakora** purchased automobiles for their own personal use, using cashier's checks drawn on the accounts of shell companies that had received fraudulent wire transfers, including Wells Fargo x8245 and Wells Fargo x5892.

<u>**Overt Acts**</u>

18.     In furtherance of the conspiracy and scheme to defraud, and to effect the objects thereof, the defendant and others committed and caused to be committed the following overt acts, among others, in the District of Maryland and elsewhere:

a.     In or about February 2017, **Amponsah**, **Attakora**, and **Asare** discussed recruiting **Hughes** to participate in the scheme to fraudulently obtain money belonging to Nymeo customers by providing **Attakora** and others with account information belonging to Nymeo customers.

b.     In or about February 2017, **Hughes** searched the Nymeo customer database and found accounts belonging to Victim 1 and Victim 2 to use to fraudulently withdraw money, which **Hughes** subsequently provided to the co-conspirators.

4

c.      In or about February 2017, **Asare** reserved a room at the Hyatt Regency in Atlanta, Georgia, under his pseudonym, "Pedro Johnson."

d.      On or about February 12, 2017, **ARTHUR**, **Asare**, and **Attakora** drove together from Maryland to the vicinity of Atlanta, Georgia.

e.      In or about February 2017, while in Georgia, **ARTHUR**, **Asare**, and **Attakora** met with an individual who agreed to pose as Victim 2 at a branch of a Nymeo affiliate in Atlanta.

f.      In or about February 2017, while in Georgia, in the presence of **ARTHUR** and **Attakora**, **Asare** handed the individual-imposter a counterfeit identification card in the name of Victim 2.

g.      In or about February 2017, while in Georgia, **ARTHUR**, **Asare**, **Attakora**, and the individual-impostor agreed to meet at a branch of the Nymeo affiliate in Atlanta, but the impostor did not show up.

h.      On or about February 14, 2017, **ARTHUR**, **Asare**, and **Attakora** drove from Georgia to Maryland.

i.      On or about February 24, 2017, **Asare** and **Attakora** drove **Azianbidji** to the Gaithersburg, Maryland, branch of Nymeo, where **Azianbidji** presented **Hughes** with a counterfeit State of Maryland driver's license bearing the name of Victim 1 and a wire transfer form requesting the transfer of $327,000 from a Nymeo bank account belonging to Victim 1 to Wells Fargo x8245.

j.      On or about February 24, 2017, using the wire transfer form and counterfeit Maryland driver's license provided by **Azianbidji**, **Hughes** initiated and authorized the $327,000 wire transfer.

k.      On or about February 24, 2017, **Azianbidji** made a cash withdrawal of $6,000 from the Nymeo bank account of Victim 1.

l.      On or about February 25, 2017, **ARTHUR** and **Asare** traveled to a Wells Fargo branch in Maryland and obtained two cashier's checks in the amounts of $23,852.37 and $60,247.63, both drawn on Wells Fargo x8245.

m.      On or about February 25, 2017, at a Wells Fargo branch in Maryland, **ARTHUR** and **Asare** withdrew $7,000 in cash and obtained an additional cashier's check in the amount of $34,000, while paying a $10 fee (for a total of $41,010) from Wells Fargo x8245.

n.      On or about February 25, 2017, **Attakora** received the cashier's check in the amount of $23,852.37 drawn on Wells Fargo x8245 and used that cashier's check to purchase a white Mercedes Benz from a car dealership in Virginia.

o.      On or about February 25, 2017, **Asare** received the cashier's check in the amount of $60,247.63 drawn on Wells Fargo x8245 and used that cashier's check to purchase a white Range Rover from a dealership in Virginia.

p.      On or about February 25, 2017, **ARTHUR** and **Asare** transferred $201,000 from Wells Fargo x8245 to Wells Fargo x5892, which was controlled by **Amponsah**.

q.      On or about February 28, 2017, **Amponsah** issued a check to **Attakora** in the amount of $7,000 drawn on Wells Fargo x5892.

r.      On or about March 1, 2017, **Amponsah** issued a check to **Attakora** in the amount of $9,000 drawn on Wells Fargo x5892.

s.      On or about March 1, 2017, **Amponsah** issued a check to Anivac in the amount of $20,000 drawn on Wells Fargo x5892, which **ARTHUR** attempted to deposit into SunTrust x6559.

      t.      On or about March 9, 2017, **Asare** and **Attakora** again drove **Azianbidji** to the Gaithersburg, Maryland, branch of Nymeo where **Azianbidji** presented **Hughes** with an $82,000 wire transfer request from the Nymeo bank account of Victim 1 to Wells Fargo x8245, along with a counterfeit State of Maryland driver's license bearing the name of Victim 1 and a picture of **Azianbidji**.

      u.      On March 9, 2017, **Hughes** processed the $82,000 wire transfer request, but it was not honored by Nymeo.

18 U.S.C. § 1349

7

## COUNT TWO
### (Money Laundering Conspiracy)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 7 and 9 through 18 of Count One are incorporated here.

2.      From a time unknown to the Grand Jury, but beginning at least in or about February 2017 and continuing through in or around April 2017, in the District of Maryland and elsewhere, the defendant,

### FRANCIS ARTHUR,

did knowingly combine, conspire, and agree with **Amponsah**, **Asare**, **Attakora**, **Azianbidji**, and other persons known and unknown to the Grand Jury to commit money laundering in violation of 18 U.S.C. § 1956, that is, to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity—that is, wire fraud, in violation of 18 U.S.C. § 1343—and while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

    a.      with the intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

    b.      knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(l)(B)(i).

### Manner and Means of the Money Laundering Conspiracy

It was part of the conspiracy that:

3.      The defendant and his co-conspirators engaged in financial transactions whereby the proceeds of wire fraud were delivered to the defendant and his co-conspirators with the intent

that the defendant and his co-conspirators would transfer said proceeds by wire transfer to the defendant and his co-conspirators, in ways designed to promote the carrying on or the specific unlawful activity and in ways designed to conceal and disguise the nature, source, ownership, and control of the proceeds.

4.      The defendant and his co-conspirators transferred funds by wire, withdrew cash, caused cashiers' checks to be issued, and purchased motor vehicles to conceal funds that were derived from wire fraud, and to facilitate the promotion of further wire fraud.

18 U.S.C. § 1956(h)

## COUNTS THREE THROUGH SEVEN
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 7 and 9 through 18 of Count One are incorporated here.

2. On or about February 25, 2017, in the District of Maryland and elsewhere, the defendant,

### FRANCIS ARTHUR,

did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity—that is, wire fraud, in violation of 18 U.S.C. § 1343—(a) with the intent to promote the carrying on of the specified unlawful activity; and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity: and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| Count | Monetary Transaction |
|-------|---------------------|
| 3 | Cashier's check in the amount of $23,852.37 from Wells Fargo x8245 |
| 4 | Cashier's check in the amount of $60,247.63 from Wells Fargo x8245 |
| 5 | Cash withdrawal in the amount of $7,000 from Wells Fargo x8245 |
| 6 | Cashier's check in the amount of $34,000 from Wells Fargo x8245 |
| 7 | Wire transfer in the amount of $201,000 from Wells Fargo x8245 to Wells Fargo x5892 |

18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.     Pursuant to Federal Rule of Criminal Procedure 32.2, notice is given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), in the event of the defendant's conviction on Counts One through Seven of this Second Superseding Indictment.

### Wire Fraud Forfeiture

2.     Upon conviction of the offense set forth in Count One of this Second Superseding Indictment, the defendant,

### FRANCIS ARTHUR,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A) and 28 U.S.C § 2461(c), any property, real and personal, which constitutes or is derived from proceeds traceable to such offense, including but not limited to: at least $333,000 in United States currency.

### Money Laundering Forfeiture

3.     Upon conviction of the offenses set forth in Counts Two through Seven of this Second Superseding Indictment, the defendant,

### FRANCIS ARTHUR,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real and personal, involved in such offense, and any property traceable to such property.

### Substitute Assets

4.     If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

   a.     cannot be located upon the exercise of due diligence;

11

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

        without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C.

§ 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up

to the value of the forfeitable property described above.

18 U.S.C. § 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Jonathan F. Lenzner
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Dated:  September 8, 2021