IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. PWG-17-253 |
| | * | |
| FRANCIS ARTHUR, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, Erek L. Barron, United States Attorney for the District of Maryland, Christian J. Nauvel, Special Assistant United States Attorney, and Thomas M. Sullivan, Assistant United States Attorney for said District, respectfully submits this Sentencing Memorandum. For the reasons set forth below, the Government requests that this Court impose a sentence of 78 months imprisonment, followed by three years of supervised release, and restitution in the total amount of $339,000.

**I.      PROCEDURAL BACKGROUND**

On September 8, 2021, a federal grand jury for the District of Maryland returned a Second Superseding Indictment charging the Defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i) (Counts Three through Seven). ECF No. 364. On October 17, 2021, a jury convicted Arthur of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Three through Seven) following several days of trial. ECF No. 438. A Presentence Investigation Report ("PSR") was issued on December 2, 2021, and sentencing is set for March 15, 2022 at 9:30 a.m.

## II.   ANALYSIS

### A.   Criminal History Category and Guidelines Range

Probation has calculated that the Defendant's total offense level is a 28, and his Criminal History Category is I.   *See* PSR at ¶ 59.   The total adjusted offense level for Counts Two through Seven is therefore 28.   *Id.*   The resulting guidelines range, based on a Criminal History Category of I is 78 to 97 months.   *Id.*   The government concurs with the PSR's calculations.   For the reasons discussed below, the government proposes a bottom of the guidelines range sentence of 78 months.

As described in the final PSR, the government's only objection to the initial draft pertained to an obstruction of justice adjustment—a position with which Probation ultimately agreed.   *See* PSR at pgs. 18-19.   The government's position is that the Defendant's offense level needed to be increased by 2 levels, pursuant to U.S.S.G. § 3C1.1, because he willfully obstructed or impeded the administration of justice (or at the very least attempted to do so).   *Id.*   More specifically, the government believes that a two-level upward adjustment is appropriate, pursuant to U.S.S.G. § 3C1.1 to account for the Defendant's willful attempt to obstruct or impede the administration of justice with respect to the investigation or prosecution of the instant offenses of conviction. U.S.S.G. § 3C1.1 provides that such an enhancement is appropriate if the Defendant:

> willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation [or] prosecution of the instant offense of conviction and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense…

The commentary further notes that "obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct

was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1 cmt. n. 1.  Examples of obstructive conduct covered by this guideline include:

- providing materially false information to a judge or magistrate judge; and
- committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction
- providing materially false information to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense

*Id*. cmt. n. 4.

Based on the above guidance, there are many facts in this case that qualify the Defendant for an obstruction of justice enhancement.  Overall, the Defendant claimed not to know that the funds he laundered for his coconspirators were the proceeds of a crime.[1]  As the government argued at trial (and the jury necessarily agreed—due to the intent element of each crime for which he was convicted), this was not true.  There were more specific instances of Arthur providing false testimony, as well.  For example, while the Defendant was truthful about travelling to Atlanta with his coconspirators Kelvin Asare and Samuel Attakora, he lied about what he did there.  Arthur claimed that he stayed in his hotel room rather than going to recruit an impostor along with Asare and Attakora.[2]  At trial, Attakora described what actually happened.  Arthur visited the impostor's apartment (along with his coconspirators) and was present for the resulting conversations about the fraud.  Attakora's version of the facts is corroborated.  For example,

---

[1] *See, e.g., United States v. Arthur*, PWG-17-253, Transcript of Trial Proceedings at 32 (October 18, 2021), attached as Exhibit A.

[2] *Id.* at 15.

details about this Atlanta trip were subsequently verified by the government, including, e.g., that Arthur received a Western Union cash transfer while there, to pay for the hotel room. Arthur also claimed, falsely, that he only performed the February 25 transactions under duress from Asare and Attakora, who came to his place of work and verbally abused him.[3] This is belied by photographs of Arthur and Asare at the bank, in which they appear relaxed and quite friendly with each other:

 

Casting further doubt on the claim that his coconspirators had been abusive, Arthur admitted to leaving the individual he cared for (who suffered from Autism and Down's Syndrome) in the bank's parking lot with Attakora. Another example of the Defendant's untruthfulness on the stand includes him claiming to not remember withdrawing proceeds from the Teresa Preston and LibGo Travel frauds—despite being presented with the checks, in his own handwriting, that he evidently made out to himself.[4] See, e.g., the following exchange from the Defendant's own direct examination at trial, which pertains to one (of at least five) such checks:

---

[3] *Id.* at 23-24.

[4] *Id.* at 34-37.

4

| | | |
|---|---|---|
| Q. | All right. I'll move on. Let's go to this. This is Government 22.7. Am I correct, Mr. Arthur, that this is a check also on the SunTrust account and for $4000 dated March 22, 2017, is that correct? |  |
| A. | Yes.[5] | |
| | … | |
| Q. | But this is also written to Francis Arthur, correct? |  |
| A. | Yes. | |
| Q. | Does this writing look like your handwriting? | |
| A. | It appears to be my handwriting. | |
| Q. | And does that signature appear to be your signature moving to the signature page? | |
| A. | It appears to be. | |
| Q. | Do you have any recollection of writing this check? | |
| A. | No. | |
| Q. | Do you sitting here today, do you have any knowledge, assuming this went through, of what happened to this $4000? | |
| A. | No. | |
| Q. | Did you receive this $4,000? | |
| A. | No.[6] | |

The Government further agrees with Probation's assessment of the Guidelines range for supervised release. Since the offenses at issue are all Class C Felonies, the Guidelines range for a term of supervised release is 1 year to 3 years per Count, to run concurrently. *See* PSR at ¶ 63.

---

[5] *Id.* at 35.

[6] *Id.* at 35-36.

B.     Section 3553 Analysis

Section 3553(a) of Title 18 of the United States Code directs a sentencing court to consider the following factors in imposing a sentence: (1) the nature, circumstances, and the seriousness of the offense; (2) the history and characteristics of the defendant; (3) the need to promote respect for the law; (4) the need to provide just punishment; (5) the need to deter the defendant from committing criminal conduct in the future; (6) the need to deter others from committing similar criminal conduct; (7) the need to protect the public from further crimes of the defendant; (8) the kinds of sentences available; and (9) the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct.

The Government will discuss the facts for each § 3553(a) factor at sentencing. Considering of all these factors, the Government believes that a term of imprisonment of 87 months for Counts Two through Seven (Conspiracy to Commit Money Laundering and Money Laundering) would be sufficient but not greater that necessary to serve the aims of sentencing. *See* 18 U.S.C. § 3553. This middle of the guidelines range sentence is appropriate, when considering the § 3553(a) factors.

The Defendant's offense conduct was serious and required the coordinated effort of several individuals. Among other things, the offense conduct involved multiple people planning the scheme, including an imposter who assumed the identity of the true bank account holder ("Victim 1"), a bank insider who provided Victim 1's information, and the Defendant himself, who laundered the stolen money through fake business bank accounts. As the signatory on these accounts, the Defendant had the power to stop the entire scheme, return the stolen money, or turn his co-conspirators in to the police, but did none of these things.

Conspiracies are especially dangerous to society because concerted criminal activity by

more than one individual increases the likelihood of achieving the goals of the conspiracy—hence the greater potential for societal harm. Criminal conspiracies also increase the amount of criminal proceeds, because participants can focus on and play separate, distinct roles in committing joint criminal activity. In this instance, the conduct did in fact result in multiple victims losing a substantial amount of money. *See* PSR at ¶¶ 6-18. Specifically, Alireza Mohajder had $339,000 stolen from his account,[7] while Teresa Preston lost $50,000.[8] Such deliberate and harmful conduct deserves a significant sentence—as just punishment, to promote respect for the law, to protect the public from further crimes, and to deter others from engaging in similar schemes. Furthermore, the Defendant has, to this day still not accepted responsibility for his conduct. At the same time, the government acknowledges that the Defendant has no criminal history. Thus, taken together, the Government views the 18 U.S.C. § 3553(a) factors as supporting a sentence near the bottom of the advisory sentencing guidelines range.

      Should the Defendant—who is not a U.S. citizen—be permitted to remain in the United States after his imprisonment, a significant term of supervised release should be imposed, especially when considering the significant amount of restitution owed. Hence, the government further recommends that the custodial sentence be followed by three years of supervised release— which is at the top of the guidelines range. This term of supervised release will maximize the Government's ability to obtain restitution for the victims of Defendant's crimes.

---

[7] Although he was ultimately made whole by his bank (and the bank's insurer), he remains traumatized by the entire ordeal. *See* Mohadjer Victim Impact Statement, attached as Exhibit B.

[8] *See* Preston Victim Impact Statement, attached as Exhibit C.

### C.      Similarly Situated Defendants

Arthur's co-defendants have all either pleaded guilty or otherwise resolved the cases against them.   Of these defendants, only two have been sentenced: Kelvin Asare and Kokou Azianbidji. Their sentences are summarized below:

| Defendant | Resolution | Crime(s) of Conviction | Sentence |
|---|---|---|---|
| Kelvin Asare | Guilty plea | 18 U.S.C. § 1349 | 25 months imprisonment; 3 years supervised release |
| Kokou Azianbidji | Guilty plea | 18 U.S.C. § 1349<br>18 U.S.C. § 1028A | 44 months imprisonment; 3 years supervised release |

Both Asare and Azianbidji pleaded guilty to Conspiracy to Commit Bank Fraud under 18 U.S.C. § 1349 (a Class B Felony); while Azianbidji also pleaded to Aggravated Identity Theft under 18 U.S.C. § 1028A(a)(1) (a Class E Felony).   The remaining charges against them (including substantive and conspiracy to commit money laundering) were subsequently dismissed. Although neither Asare nor Azianbidji benefitted from a downward departure for substantial assistance to authorities under U.S.S.G. § 5K1.1, both promptly admitted to their crimes and expressed remorse for the harm that they caused—receiving deductions for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b).   Neither Asare nor Azianbidji received adjustments for obstruction of justice.   As a result, both Asare and Azianbidji had Total Offense Levels of 18.   Like Arthur, both Asare and Azianbidji had a criminal history Category of I.

### D.      Restitution

Sentencing statutes provide that this Court, "in imposing a sentence on a defendant who has been found guilty of an offense[,] shall order restitution in accordance with section 3663A [the Mandatory Victims Restitution Act ("MVRA")], and may order restitution in accordance with section 3663 [the Victim and Witness Protection Act ("VWPA")]."   18 U.S.C. § 3556.   The

8

statute further subjects both discretionary and mandatory restitution orders to the procedures set forth in 18 U.S.C. § 3664.  The government requests that restitution be joint and several with Kelvin Asare, Gifty Amponsah, Kokou Azianbidji, and any other individual(s) convicted of the underlying scheme.

## IV.     CONCLUSION

For the reasons set forth above and others as may be presented at sentencing, the Government respectfully requests that the Court sentence Francis Arthur to 87 months of imprisonment, followed by three years of supervised release.  Such a sentence is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553.   The Government will also request an order seeking full and immediate payment of $339,000 in restitution.

                              Respectfully submitted,

                              EREK L. BARRON
                              United States Attorney

By:                /s/
                              Christian J. Nauvel
                              Special Assistant United States Attorney

                              Thomas M. Sullivan
                              Assistant United States Attorney

**CERTIFICATE OF SERVICE**

This is to certify that on this 1st day of March, 2022, I caused a copy of the foregoing document to be filed on all parties through ECF.

/s/
Christian J. Nauvel
Special Assistant United States Attorney

Thomas M. Sullivan
Assistant United States Attorney